ᴾ

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

MIRANDA KORIN RIVERA,

               Plaintiff,

v.

MERCHANTS AUTOMOTIVE
GROUP, INC. et al,

               Defendants.

Case No.  3:21-cv-1472-L-BLM

**ORDER DENYING
DEFENDANT'S MOTION TO
DISMISS [ECF NO. 6] AND
DENYING PLAINTIFF'S
MOTION TO REMAND [ECF
NO. 13.]**

      Pending before the Court is Defendant's Motion to Dismiss for lack of subject matter jurisdiction [ECF No. 6], and Plaintiff's Motion to Remand Case to State Court in this case concerning an automobile collision.  [Doc. No. 13.]  The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1(d)(1). For the reasons stated below, the Court DENIES the Motion to Dismiss and DENIES the Motion to Remand.

I.    Fᴀᴄᴛᴜᴀʟ ᴀɴᴅ Pʀᴏᴄᴇᴅᴜʀᴀʟ Bᴀᴄᴋɢʀᴏᴜɴᴅ

      On June 28, 2018, Plaintiff Miranda Korin Rivera ("Rivera") was traveling southbound along Midway Drive in the City of San Diego when the vehicle she was

driving was struck by the vehicle driven by Glenn Dyer ("Dyer") when he made an unsafe lane change and caused a collision.  As a result of the collision, Plaintiff sustained significant injuries.  Dyer was found to be at-fault for the collision.

On May 26, 2020, Plaintiff filed a complaint in the Superior Court of California, County of San Diego, naming Glenn Dyer, Merchants Auto Group, Inc., and Fox Rent-A-Car, Inc, as Defendants.  On July 18, 2021, each Defendant filed an Answer in the Superior Court.

On August 18, 2021, the United States filed a Notice of Removal, removing the case to this Court and substituting itself as a Defendant for Defendant Dyer.  In the Notice, the United States certified that Dyer was acting within the scope of his employment as an employee of the United States Navy at the time of the collision, therefore, the claims arose under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, as amended by the Federal Employees Liability Reform and Tort Compensation Act of 1988 § 5, Pub. L. No. 100-694. 102 Stat. 4563 (FTCA).  (Notice at 2 [ECF No. 5.])

On August 19, 2021, the United States filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), claiming that the Court lacked jurisdiction because Plaintiff had not presented an administrative claim to the appropriate federal agency as required for claims brought under the FTCA.  (MTD at 1-2 [ECF No. 6.])

On September 16, 2021, Plaintiff filed a Response in Opposition to the Motion to Dismiss arguing that the Notice of Removal was untimely because it was filed after the 30-day clock for removal expired.  (Pl. Oppo. MTD at 3-4 [ECF No. 12.])  On the same day, Plaintiff filed a Motion to Remand, asserting among other claims that the United States is not a proper party because Dyer was not operating his vehicle in the course and scope of employment with the Navy. (Mot. Remand at 4-5 [ECF Nos. 13.])

On September 22, 2021, the United States filed its Reply to Plaintiff's Opposition

to the Motion to Dismiss.  [ECF No. 14.] On October 5, 2021, the United States filed its Response in Opposition to the Motion to Remand. [ECF No. 15.]  On October 11, 2021, Plaintiff filed a Reply to the Opposition to the Motion to Remand.  [ECF No. 16.]

The Parties filed a Joint Motion for oral argument on the United States' Motion to Dismiss and Plaintiff's Motion to Remand on November 12, 2021. [ECF No. 19.]  By Order dated December 3, 2021, the Court denied the Joint Motion for Oral Argument, and granted the Parties leave to file supplemental briefing in relation to Plaintiff's Motion to Remand.  Pursuant to the Court's Order, the United States filed Supplemental Briefing on December 20, 2021 [ECF No. 25], and Plaintiff filed Supplemental Briefing on January 10, 2022. [ECF No. 27.]

II.    MOTION TO DISMISS STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction.  Fed.R.Civ.Pro. 12(b)(1).  A Rule 12(b)(1) challenge can either challenge the face of the pleadings or the facts. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual.") With a facial attack, the allegations contained in the complaint are challenged as insufficient on their face to invoke federal jurisdiction.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039(9th Cir. 2004).  When ruling on a facial attack, the Court accepts the allegations of the complaint as true. *See, e.g., Wolfe v. Strankman,* 392 F.3d 358, 362 (9th Cir. 2004).

In contrast, when deciding a factual Rule 12(b)(1) attack, a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. *Id.*  The Court need not presume the truthfulness of the plaintiffs' allegations. *White*, 227 F.3d at 1242.

//

//

//

A.    Discussion

1.    Federal Tort Claims Act

"The FTCA provides a limited waiver of the sovereign immunity of the United States for torts committed by federal employees acting within the scope of their employment." *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000).  The Act provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

28 U.S.C. § 2679(d)(2) (emphasis added); *Wilson v. Horton's Towing*, 906 F.3d 773, 780 (9th Cir. 2018); *see also Osborn v. Haley*, 549 U.S. 225, 229 (2007).  After certification by the Attorney General, "the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee."  *Osborn*, 549 U.S. at 230. "The United States . . . must remain the federal defendant in the action unless and until the District Court determines that the employee, in fact, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Id.* at 231.

Prior to filing a claim for injury or damages under the FTCA, a claimant must first file the claim with the appropriate federal agency and either receive a conclusive denial of the claim or wait for six months to elapse without a final disposition.  28 U.S.C. § 2675(a); *Jerves v. United States*, 966 F.2d 517, 519 (9th Cir. 1992)("A tort claimant may not commence proceedings in court against the United States without first filing her claim with an appropriate federal agency and either receiving a conclusive denial of the claim from the agency or waiting for six months to elapse without a final disposition of the

4

1   claim being made.") "A district court may dismiss a complaint for failure to allege this

2   jurisdictional prerequisite." *Gillespie v. Civiletti,* 629 F.2d 637, 640 (9th Cir. 1980).

3       A claimant should be given an opportunity to file an amended complaint to attempt to

4   cure such pleading defects. *Id.*  If an action is dismissed for failure first to present a claim

5   pursuant to section 2675(a) of this title, "such a claim shall be deemed to be timely

6   presented under section 2401(b) of this title if  (A) the claim would have been timely had

7   it been filed on the date the underlying civil action was commenced, and (B) the claim is

8   presented to the appropriate Federal agency within 60 days after dismissal of the civil

9   action." 28 U.S.C. § 2679(d)(5).  .

10      Defendant contends that the Court should dismiss Plaintiff's complaint because she

11  failed to present an administrative claim to the appropriate federal agency prior to filing

12  her claim.  (MTD at 3).

13      In response, Plaintiff argues that the motion to dismiss is premature because the case

14  is subject to remand for Defendant's failure to file the notice of removal within the 30-

15  day clock under 28 U.S.C. §1446(b)(1).  (Oppo. at 3).  In addition, Plaintiff claims that

16  the FTCA does not apply because Dyer was not operating his vehicle in the course and

17  scope of his employment with the Navy. (Oppo. at 4).  Plaintiff challenges the Scope of

18  Employment Certification provided by the United States. (*Id.*)

19      As a preliminary matter, the Notice of Removal was timely filed under section

20  2679(d)(2).  Plaintiff did not include a claim under the FTCA in her state court

21  Complaint, however, for the limited purposes of removal, the scope of employment

22  certification is deemed conclusive and the action is filed under the FTCA in federal court

23  until or unless the Certification is found to be deficient. *Osborn,* 549 U.S. at 242.

24  Actions under the FTCA may be removed at any time before trial, therefore the removal

25  was timely. *See* 28 U.S.C. §2679(d)(2).

26

27

28

Although Defendant contends the claim must be dismissed for Plaintiff's failure to exhaust, Plaintiff argues that the FTCA and its exhaustion requirement do not apply because Dyer was not acting within the scope of his employment at the time of the collision. The parties do not dispute that claims filed under the FTCA must be presented to the appropriate federal agency before commencement in federal court, however, Plaintiff did not seek to bring a suit under the FTCA. Accordingly, she did not include such claims in her state court Complaint. Rather, Defendant Dyer Answered that Complaint in his individual capacity, then the United States interceded. As a result, Plaintiff was not on notice that she was required to file her claim with a federal agency prior to proceeding.

If Dyer was acting within the scope of his employment, the FTCA controls here and Plaintiff's claims must be dismissed for her failure to exhaust them. *See* 28 U.S.C. § 2675(a); *Jerves*, 966 F.2d at 519. If, however, Dyer was not acting with the scope of his employment, the FTCA is inapplicable here.

2. Scope of Employment

The Attorney General's certificate is conclusive for the narrow purposes of removal, but it is not conclusive for purposes of substitution. *Gutierrez de Martinez v Lamgno*, 515 U.S. 417, 432 (1995). Instead, "the scope-of-employment judgment determinative of substitution can and properly should be checked by the court, i.e., the Attorney General's scarcely disinterested certification on that matter is by statute made the first, but not the final word." *Id*. "Section 2679(d)(2) does not preclude a district court from resubstituting the federal official as defendant for purposes of trial if the court determines, postremoval, that the Attorney General's scope-of-employment certification was incorrect." *Osborn*, 549 U.S. at 242.

In the face of Plaintiff's challenge to the Certification, the Court must review the Attorney General's Certification de novo. *Meridian Intern. Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir. 1991). Plaintiff "bears the burden of presenting

evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence." *Green v. Hall*, 8 F.3d 695, 698 (9th Cir.1993). The accident involving Plaintiff and Dyer occurred in California, therefore, this Court must apply California law in making the determination whether Dyer was acting within the scope of his employment. *Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir. 1996).

"Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when 'the facts are undisputed and no conflicting inferences are possible.'" *Mary M. v. City of Los Angeles*, supra, 54 Cal.3d 202, 213 (1991). Here, the Parties do not dispute that Dyer was driving to the airport to fly to his home in Maine after concluding a temporary duty assignment for the United States Navy. Therefore, whether Dyer was acting within the scope of his employment is a question of law to be determined "according to the principles of respondeat superior of the state in which the alleged tort occurred.'" *Wilson*, 87 F.3d at 1076.

a. Respondeat Superior

"Under the doctrine of respondeat superior, an employer is liable for the torts of its employees committed within the scope of their employment." *Bingener v. City of Los Angeles*, 44 Cal. App. 5th 134, 140 (2019).   "The scope of employment has been interpreted broadly under the *respondeat superior* doctrine." *Farmers Ins. Group v. Cnty. of Santa Clara*, 11 Cal.4th 992, 994 (1995). "[A]n employer is liable for risks 'arising out of the employment.' [Citations.] [¶] A risk arises out of the employment when 'in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Id*. at 1003. There must be a causal nexus or reasonable relationship between the employment duties and tortious conduct. "[T]he incident leading to the injury must be an 'outgrowth' of the employment [citation]; the risk of tortious

injury must be 'inherent in the working environment' [citation] or 'typical of or broadly incidental to the enterprise [the employer] has undertaken.'" *Baptist v. Robinson*, 143 Cal.App. 4th 151, 161 (2006). "California courts have also asked whether the tort was, in a general way, foreseeable from the employee's duties. Respondeat superior liability should apply only to the types of injuries that are 'as a practical matter are sure to occur in the conduct of the employer's enterprise.'" *Lisa M. v. May Newhall Memorial Hospital*, 12 Cal.4th 291, 299 (1995).

In California, "[a]n employee is generally not considered to be acting within the scope of his employment when going to or coming from his or her regular place of work." *Bingener*, 44 Cal.App. 5th at 141. "This is based on the concept that the employment relationship is suspended from the time the employee leaves work until he or she returns, since the employee is not ordinarily rendering services to the employer while traveling." *Baptist*, 143 Cal.App. 4th at 161. The "coming-and-going rule" "has several exceptions, which are generally understood to encompass those situations in which the employer derives some benefit from the employee's trip." *Id*. "When an employee is engaged in a "special errand" or a "special mission" for the employer it will negate the 'going and coming rule'." *Jeewarat v. Warner Bros. Entertainment*, 177 Cal.App.4th 427, 436 (2009). An out-of-town business trip can be considered a "special mission" under certain circumstances. *Id*.

b. Special Errand Exception

Defendant argues that the special errand exception applies here because Dyer's "drive to the San Diego airport to return to Maine toward the end of his out-of-town business trip was part and parcel of his special mission to service Navy submarines in San Diego" and the possibility that he would have an auto accident was "broadly incidental to the enterprise undertaken" while Dyer was acting "in the line of duty." (Def. Supp. Brief. at 5 [ECF No. 25.]) Defendant further contends that the incidental benefit exception applies

because the Navy furnished Dyer with a rental car to drive from his lodgings to the Point Loma Naval Base in San Diego.  (*Id*. at 6)

To determine the applicability of these exceptions to the coming-and-going rule to the present case, the Court considers Plaintiff's proffered evidence along with Dyer's declaration and travel orders. Plaintiff's counsel Gail Richardson states that she spoke to George Manahan, counsel for the United States, on August 24, 2021, regarding the assertion by the United States that Dyer was acting within the scope of his employment at the time of the incident. (Richardson Dec. at ¶11 [ECF No. 13-1.]) According to Richardson, Mr. Manahan "stated that the sole basis for the scope of employment certification was that Dyer was traveling to the San Diego Airport to return home to Maine after being temporarily stationed in San Diego."  (*Id*. at ¶ 12).

The Scope of Employment Certificate simply states "GLENN L. DYER JR., was acting within the scope of his employment as an employee of the Department of the Navy with regard to the events described in the Complaint."[1] (Scope of Employment Certification at 1-2 [ECF No. 12-1.]    In his declaration, Dyer states that he is a federal civilian employee stationed at Portsmouth Naval Shipyard working as a machinist who overhauls submarines.  (Dyer Dec. ¶ 1 [ECF No. 25-1.]) He states that he was on a temporary duty ("TDY") assignment at the Point Loma Naval Base in San Diego, California from May 14, 2018, until June 28, 2018.  *Id*. at ¶ 2. During his temporary assignment, the Government paid for his housing in San Diego and paid for him to rent a car.  *Id*. at ¶¶ 3, 4.  At the time of the incident, Dyer was renting a car from Fox Rent-A-Car.  *Id*. at ¶4.  According to Dyer, on the day of the collision, June 28, 2018, he began work at the Point Loma Naval Base at about 5:00 a.m. and completed his work at about 3:00 p.m. *Id*. at ¶5.  After he left work, he returned to his apartment in the rental car and

---

[1]Authority regarding federal employees is delegated by the Attorney General to the United States Attorney for the district where the civil action is brought. See 28 C.F.R. § 15.4(a)-(b).  The United States Attorney for the Southern District of California has re-delegated certification authority to the Chief of the Civil Division. See S.D. Cal. Civil Division Policy 19-01.

packed his belongings. *Id*. He states that he checked out a few hours later and proceeded to drive to the airport in the rental car to return to Portsmouth, Maine. *Id*. On his way to the airport he stopped for gas, then resumed his trip to the airport when his "rental car collided with a car driven by Plaintiff Miranda Korin Miranda [sic]." *Id*. at ¶ 6. After law enforcement drafted a report about the incident, Dyer proceeded to the airport, returned the rental car, and flew back to Portsmouth, Maine. *Id*.

The actions of an employee on a business trip lasting a few days in which the company pays for lodging and a rental car have been found to qualify under the special errand exception. *Jeewarat v. Warner Bros*., 177 Cal. App. 4th at 436. In *Jeewarat*, the employee attended a three-day conference for which his employer paid for airfare and hotel. *Id*. at 431. When he returned to Los Angeles, he picked up his car from the airport and on the way to his home he was involved in an automobile accident that killed one pedestrian and injured two others. *Id*. at 432. The Court held that the special errand exception applied finding that "[t]he evidence that Warner paid for Brandon's airfare, hotel accommodations, and airport parking leads to a reasonable inference that Warner expected to derive a benefit from Brandon's attendance at the conference." *Id*. at 437. The Court found that, the "special errand continues for the entirety of the trip." *Id*. at 438.

However, the exception has not applied to employees assigned for a few weeks or months to a different duty station where the employer reimbursed the employee for lodging and a rental car. *Clamor v. United States*, 240 F.3d 1215, 1216 (9th Cir. 2001). In *Clamor* a civilian employee who normally worked for the U.S. Navy in Washington D.C. was temporarily assigned to work in Pearl Harbor Naval Base in Hawaii. *Id*. After leaving work and heading to his hotel one day, he rear-ended a car and injured the other driver. *Id*. The Ninth Circuit applied Hawaii law and found that the employee "was not working the entire time he was in Hawaii, and was, in fact, off duty when the accident occurred." *Id*. at 1217. Because the employee "was not engaged in any errand for his employer, but was leaving work and free to do whatever he wished" the Court held he

was not acting within the scope of his employment. *Id*. The fact that the employer was
paying for the rental car did not indicate that the employer believed all actions taken
while driving that car were within the scope of employment. *Id*.

Similarly, a civilian employee assigned to provide technical support to aircraft at
Edwards Air Force Base in Lancaster, California for several months was not acting
within the scope of his employment when he rear-ended another vehicle in a fast-food
drive through line. *Sunderland v. Lockheed*, 130 Cal.App. 4th 1, 7 (2005). As in the
present case, the accident occurred after the employee completed the work assignment.
"It is undisputed that on the day the accident occurred, Mazloom cleared out his office,
finished work in the middle of the day, and left Edwards Air Force Base to go to his
apartment, where he spent the afternoon packing and closing the apartment." *Id*. at 11. In
finding that the employee's trip to the fast-food restaurant was a purely personal activity
the Court noted that the employee "performed no services for [the employer] after
leaving the workplace about mid-day." *Id*. at 12.

Unlike the employee in *Jeewarat*, whose business trip was a few days, Dyer's
initial travel orders were to work on submarines in San Diego for a month and a half,
starting in mid-May 2018. (Supp. Brief Dyer Dec. ¶ 2(a); Ex. 1[ECF No. 25-2.]). The
TDY was extended to June 28, 2018. (Supp. Brief Ex. 1 [ECF No. 25-2.]) The
government has not cited to, nor is the Court aware of, any binding precedent that finds
the special errand exception applicable to a temporary duty assignment spanning a period
of more than a month. At the time of the incident, Dyer had completed not just his shift
at the Point Loma Naval Base, but the entire work assignment for which he was sent to
San Diego, and there is no indication that the Navy was deriving a benefit from the
Dyer's travel to the airport. The United States claims that drive to the airport was
necessary for him to complete his mission in San Diego and return home to Maine to
continue his duties at his home base citing *Urata v. United States*, No. 12CV1277 WQH
WMC, 2012 WL 6553503, at *7 (S.D. Cal. Dec. 13, 2012)(J. Hayes). (Def. Supp. Brief at

5).

The Court finds *Urata* neither binding nor on point.[2] Unlike Dyer, the active duty servicemember in *Urata* was on duty for the entirely of her short 5-day training exercise in San Diego when she caused an automobile accident with a civilian. *Urata*, 2012 WL 6553503, at *2. As a reservist, the servicemember was on duty 24 hours a day and had no free time during the assignment. *Id*. at 7. The Court found that the special errand exception applied because the servicemember was acting "in the line of duty" and the risk of an accident was "broadly incidental to the enterprise undertaken." *Id*.  Here, Dyer was traveling from one duty station to another, therefore the Court finds that Dyer was not rendering services to the employer while traveling.  *See Bingener*, 44 Cal.App. 5th at 141. Instead, his primary objective was to head home after concluding his final shift in San Diego. *See* e.*g*. *Chapin v. United States*, 258 F.2d 465, 468 (1958) (holding that a servicemember "traveling between permanent duty stations is [traveling] 'merely during employment' and not within the scope of employment.").

The fact that the Navy paid for Dyer's travel, rental car, and accommodations does not change this analysis. *Caldwell v. A.R.B. Inc*., 176 Cal.App.3d 1028, 1040 (1986)("While in certain circumstances payment of travel expenses may be an exception under workers' compensation laws . . . the same conclusion has not been reached under the respondeat superior doctrine.")  Instead, as in *Clamor*, the fact that the Navy paid for the rental car is more indicative of the inability of the employee to use his or her private vehicle when the temporary duty station is on the other side of the United States, or on an island in the Pacific Ocean, as was the case there.  *Clamor*, 240 F.3d at 1216 ("The fact that the United States reimbursed the cost of his rental car is more indicative of the

---

[2] "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Green,* 563 U.S. 692, 709 n.7 (2011).

inconvenience of working on an island in the middle of the Pacific Ocean (which makes it difficult for a temporary employee to bring his own car to work than an indication that the employer considered all actions taken while driving that car to be within the scope of employment.")

The Court finds that Dyer was not acting within the scope of his employment at the time of the accident for the foregoing reasons. In light of that finding, the Scope of Employment Certification was issued in error. Dyer must be substituted back as a defendant and the FTCA does not govern this case.  Nevertheless, the Court retains jurisdiction and does not have authority to remand the action to state court. *Osborn*, 549 U.S. at 242 (Under section 2679(d)(2), the Certification conclusively establishes a basis for removal, even if it is ultimately found to be in error.) Accordingly, Plaintiff's Motion to Remand is denied.

III.  CONCLUSION AND ORDER

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED** and Plaintiff's Motion to Remand is **DENIED**.

    **IT IS SO ORDERED.**

Dated:  March 18, 2022

Hon. M. James Lorenz
United States District Judge